**Opinion filed June 21, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00042-CV

_____

## IN THE INTEREST OF M.L.S. AND S.H., CHILDREN

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 47,675**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal of the trial court's order terminating parental rights. We affirm.

Appellant is the mother of M.L.S. and S.H. At the time of trial, M.L.S. was three years old, and S.H. was eleven months old. Both children were born with cocaine in their systems. Three days after S.H. was born, the Texas Department of Family and Protective Services filed a petition seeking protection of the children, conservatorship, and termination of parental rights. The court appointed the Department as the temporary sole managing conservator of the children, and the Department placed the children in a foster home.

After a bench trial, the trial court found that termination of appellant's parental rights as to M.L.S and S.H. was in the best interest of both children and that appellant had (1) knowingly

placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children; (4) used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program or, after completing the program, continued to abuse a controlled substance; and (5) been the cause of the children being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE. ANN. §§ 161.001(1)(D), (E), (O), (P), (R); 161.001(2) (West Supp. 2011). The trial court also terminated the rights of the unknown father of M.L.S. and the known father of S.H. Neither father appealed the trial court's order. The trial court appointed the Department as the permanent managing conservator of the children.

In ten issues, appellant alleges that the evidence was legally and factually insufficient to support the trial court's findings as to each of the first four grounds for termination listed above and to support the trial court's finding that termination was in the best interest of the children. However, appellant does not challenge the legal and factual sufficiency of the evidence as to the trial court's finding that she was the cause of the children being born addicted to alcohol or a controlled substance under Section 161.001(1)(R). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Although the trial court's oral pronouncement of judgment only included findings that appellant's parental rights should be terminated based on Section 161.001(1)(D), (E), (O), and (P), the written judgment of the trial court also included a finding that her rights should be terminated under subsection (R). When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls. *In re A.S.G.*, 345 S.W.3d 443, 448 (Tex. App.—San Antonio 2011, no pet.); *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Because appellant does not challenge the trial court's written finding that she was the cause of M.L.S. and S.H. being born addicted to alcohol or a controlled substance under subsection (R), we need not address her arguments, in Issues One through Eight, that the evidence was legally and factually insufficient to support the other four

grounds for termination found by the trial court. We overrule appellant's first eight issues on appeal.

In appellant's ninth and tenth issues, she contends that the evidence was legally and factually insufficient to support the trial court's ruling that termination was in the best interest of the children under Section 161.001(2).

To determine whether the evidence is legally sufficient, we review the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so, and we must disregard all evidence that a reasonable factfinder could have disbelieved. *Id.*

To determine whether the evidence is factually sufficient in a parental termination case, we look to see whether a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). If, in light of the entire record, there is disputed evidence that a reasonable factfinder could not have resolved in favor of the finding and if that disputed evidence is so significant that a factfinder could not have reasonably formed a firm belief or conviction that the finding was true, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The Texas Supreme Court has recognized several factors to consider in determining whether termination is in the best interest of the children: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This list of factors is not exhaustive, and not all of the factors must be considered in order to support a finding that termination is in the best interest of the children. *In re C.H.*, 89 S.W.3d at 27.

Appellant testified that she had three children over a period of nine years and that, during those nine years, she used cocaine. Not only were M.L.S. and S.H. born with cocaine in their systems, as we have previously noted, but her oldest child was also born with cocaine in his system. He has lived with his father since he was three or four. Appellant agreed that, when she used drugs before, during, and after her pregnancies, she was placing her children in conditions that endangered their physical and emotional well-being.

As part of appellant's family service plan, she was required to participate in counseling, and she successfully did. Her counselor recommended that she complete an inpatient substance abuse program. At the completion of the inpatient program, she was advised to complete an outpatient program and attend AA/NA meetings. She testified that she had not completed any portion of the outpatient program because it was located in Midland and she did not have a ride or enough money for other transportation; she lived in Big Spring. It was her understanding that the Department was going to help her find an outpatient program in Big Spring, but that did not occur. She also testified that she had not recently been to any AA meetings; NA meetings were not offered in Big Spring. Appellant was participating in random drug testing, and all of her drug tests had come back negative.

Appellant was also required to attend parenting classes as part of her service plan. She testified that she attended three classes but was unable to attend any other classes due to her work schedule. Shawna Cuevis, a conservatorship supervisor and caseworker for the Department, testified that the Department only received documentation that appellant participated in one class, not three.

Norma Lopez, an administrative assistant at the Department, supervised appellant's visits with her children. She testified that appellant had not missed any recent visits and that, in all, she only remembered appellant missing one or two. However, appellant would regularly cut her two-hour visits short by thirty to forty-five minutes. Although appellant acted appropriately around her children and her children recognized her and seemed to enjoy their time with her, Lopez did not think that they were bonded the way a mother and her children should be bonded. Deborah Morton, the children's CASA advocate, testified that she observed one visitation between the children and appellant and that, in her opinion, the children did not appear to be bonded with appellant, although they did appear to be comfortable.

At the time of trial, M.L.S. and S.H. had lived in foster care with Jamie and Brian Mathis for eleven months. Jamie testified that, when M.L.S. first came to live with them, he was very aggressive. He would bang his head against the walls, try and pull out his hair, scratch his skin, and yell at the top of his lungs. He would also act out sexually on oversized stuffed animals they had in the home. M.L.S. had many behavioral issues immediately after visiting with appellant, such as screaming, kicking, pulling out his hair, intentionally defecating himself, and throwing his "sippy cup" against the window in the car. He also had frequent nightmares. When he turned three, he began going to play therapy. The therapy has helped with his aggression, and he now only has aggressive moments after supervised visits with appellant.

Jamie had to take S.H. to the emergency room for breathing tremors when she was five days old. After S.H.'s first visit with appellant, S.H. suffered from the same tremors. Jamie took S.H. directly to the doctor after a subsequent visit so that the doctor could listen to her breathing. Due to her allergy to cigarette smoke, S.H. was having difficulty breathing and was gasping for air. S.H. was diagnosed with allergic rhinitis, and smoking restrictions were put into place. For S.H.'s health and physical well-being, Jamie believed that it was in S.H.'s best interest to not be around anyone that had been smoking. S.H. also required daily joint compressions to keep her from becoming stiff.

Although appellant was aware of her daughter's allergy, she continued to smoke. However, appellant testified that she would quit smoking if necessary. Appellant's father and appellant's boyfriend also smoked, but both would quit if the children were returned.

Appellant testified that she had a three-bedroom home available for the children if they were returned to her. However, appellant did not currently reside in that home and took the position that she did not need to prepare an appropriate place for her kids to live unless she got them back. At the time of the trial, appellant lived with her boyfriend in a one-bedroom home. She had lived with her boyfriend for approximately five months, and she planned to continue to live with him if the children were returned. Her boyfriend was on parole from a conviction for possession of methamphetamine. He had also previously been investigated by CPS. Appellant believed that her children living with her and her boyfriend, despite his criminal and CPS history, was in their best interest because he was a changed man. Cuevis disagreed and testified that the Department's position was that the children would not be safe in an environment that included appellant's boyfriend.

5

On the two occasions that Morton visited their home, it smelled very strongly of smoke. She was very disappointed and did not feel that they were taking S.H.'s condition seriously. Morton also believed that they would continue to smoke.

Appellant's father testified that, in the event the children were not returned to his daughter, he would be willing and able to provide a home for them and care for them. Morton testified that there was a very strong odor of smoke on the two occasions she visited his home. There were also twenty to thirty cigarette butts in ashtrays inside his home. Appellant's father acknowledged that he had smoked for thirty years but said he would quit if the children were placed in his custody. He had quit for lengths of time in the past and said he would do whatever it took to ensure that S.H. was in a safe and appropriate home in light of her respiratory problems. Morton did not feel that appellant's father was taking S.H.'s condition seriously, and she believed that he would continue to smoke. Appellant's father also had a criminal history that included serving time on probation and parole prior to his children being born. In addition, he had been investigated by CPS five to eight times; each case was dismissed. The last time he was investigated by CPS was ten or fifteen years before the trial.

Elyse Starr, a foster home developer for the Department, testified that appellant's father had been recommended as a relative that the children could live with, but he never provided the Department with the required paperwork for someone with a criminal history. In order for the Department to complete a risk evaluation on an individual with a criminal history, the individual is required to send the Department a personal letter attesting to his criminal history, explaining how his life has changed since the criminal activity, and stating why his home should be considered for the children's placement. Appellant's father did send a letter detailing why he should be considered for the placement of his grandchildren, but he never sent a letter addressing his criminal past and how he had changed. Although Starr had originally sent the request to the wrong address, she testified that she had since furnished appellant's father with the details of the request on numerous occasions. In her experience, she usually receives the requested information and completes a risk evaluation in thirty days. Appellant's father testified that he was never told to send a letter explaining how he had changed.

Jamie testified that both children had adapted well to living with her and her husband. Although they were living in a two-bedroom, one-bathroom rental at the time of trial, they were under contract on a three-bedroom, two-bathroom home and were planning to move into that

home within a month. Jamie testified that she and her husband had accepted both children into their home, that they had bonded with both children, and that both children were thriving.

Morton testified that she observed the children in the Mathis home and believed that they were thriving. She had no concerns about the children continuing to reside with the Mathises and believed that it was in the best interest of the children to remain in their care. Morton also testified that, based on her observations, it would be detrimental to the children if they were placed with appellant and her boyfriend or with appellant's father.

Cuevis testified that she was comfortable and satisfied with the children's placement in the Mathis home. She believed that they were in a safe environment and that the Mathises were making every reasonable effort to control the children's environment so that they could properly thrive and grow. Cuevis testified that it was the Department's recommendation, based on the best interest of the children, that appellant's parental rights be terminated.

Having reviewed the evidence in the light most favorable to the best interest finding under the *Holley* factors, we hold that the trial court could have formed a firm belief or conviction that terminating appellant's parental rights was in the best interest of M.L.S. and S.H. We also hold that the disputed evidence as to the best interest finding was not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination was in the children's best interest. The evidence was legally and factually sufficient to support the trial court's best interest finding. Appellant's ninth and tenth issues are overruled.

The order of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


June 21, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7